# IN THE COURT OF APPEALS OF IOWA

No. 15-0035
Filed August 19, 2015

**IN RE THE MARRIAGE OF JAMES R. SHOVAR
AND CHRISTINA A. SHOVAR**

**Upon the Petition of
JAMES R. SHOVAR,**
　　　　Petitioner-Appellant,

**And Concerning
CHRISTINA A. SHOVAR,**
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Scott County, Paul L. Macek,

Judge.


　　　　James Shovar appeals the physical care award and property division of

the dissolution decree. **AFFIRMED AS MODIFIED.**



　　　　Dennis D. Jasper, Bettendorf, for appellant.

　　　　Michael J. McCarthy of McCarthy, Lammers & Hines, Davenport, for

appellee.



　　　　Considered by Potterfield, P.J., and Tabor and McDonald, JJ.

**POTTERFIELD, P.J.**

James Shovar appeals the physical care award and the property division of the decree dissolving his marriage to Christina Shovar. We affirm the award of physical care of the children to Christina and modify the property division. We split costs equally and decline to award attorney fees.

## I.     BACKGROUND FACTS AND PROCEEDINGS

James and Christina were married in 2003. The parties have two children, and Christina has one child from an earlier marriage.

At the time of trial, James was forty-two years old and in good health. He has been diagnosed with obsessive-compulsive disorder. James works at a marketing company where he earns an annual income of $88,912.

Christina is forty-two years old and is also in good health. She works fulltime for a health insurance company. She earns additional money by working part-time at a community credit union and donating plasma. Christina earns an annual income of $29,914. The child from Christina's earlier marriage is in the custody of his father; Christina has visitation.

In 2008, Christina initiated an action for dissolution of marriage. The parties reconciled. In June, 2010, James began keeping a detailed journal to document the parties' daily lives, including his perceptions of Christina's shortcomings. James eventually filed a petition for dissolution in February 2013, and trial was held on August 19, 2014. Relevant to this appeal, the district court granted Christina physical care of the two children; James received liberal visitation. The court found:

Both parties love their children. Both parents are capable of being mean, nasty, and venal in respect to each other; both parents are also capable of being friendly, outgoing, and considerate. Both parents are capable of setting aside the acrimony of this divorce process. Both parties are capable of working together for the benefit of their children. The difficulty is that the court does not anticipate that the parties will live up to their respective capabilities in this regard. The history of this divorce predates the filing of the petition by approximately three years. For this period of time [James] did not communicate with [Christina] in any meaningful way on any meaningful topic. . . . For three years, [James] demonstrated nothing but disdain for [Christina]. He demonstrated an utter lack of respect for her. The degree of conflict in this divorce was exceptional. Calling one child a "fucking liar" on the one hand and denying backpacks on the other, are two small examples which demonstrate the lengths each party have gone in creating conflict within this process. However, [Christina] has only demonstrated this level of conflict during the pendency of this divorce. The three years prior to the filing of the petition in this matter demonstrates a woman who tried to be a good wife and was a good mother. She was not always successful. She did not meet [James's] expectations. But, as demonstrated by the diary, James has been allowing his anger and negative attitude to build over three long years. It is regrettable that he did not recognize the cancer that was growing, communicate his issues with [Christina], and seek help either with [Christina] or individually. The fact is that he did not. Instead, the diary was meticulously prepared and maintained to be used as evidence in an upcoming custody dispute.

The parties had agreed that the marital home be awarded to the physical care parent. To effect their agreement, the court granted Christina the marital home, including the obligation to pay the note secured by the mortgage, for as long as she receives child support for the children. While the deed to the home is in both parties' names, the note is solely in James's name. The court found neither party could afford to refinance; James would remain liable for the note until the children reach majority age and child support would no longer be required—thirteen years. The court ordered the sale of the home when the children reached majority and ruled that the parties share the net proceeds of the

sale. The district court found James would be reimbursed for the inconvenience of remaining obligated on the mortgage by receiving one-half of the net proceeds of the sale of the home in thirteen years.

James appeals.

## II. STANDARD OF REVIEW

Our review of dissolution of marriage proceedings is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "We give weight to the findings of the district court, especially to the extent credibility determinations are involved." *Id.*

## III. ANALYSIS

### A. Physical Care

James claims the district court should have awarded him physical care of the two children. In matters of child custody, the first and foremost consideration "is the best interest of the child involved." *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983); *see also* Iowa R. App. P. 6.904(3)(o). The Iowa Code provides a nonexclusive list of factors to be considered in determining a custodial arrangement that is in the best interest of a child. Iowa Code §§ 598.41(3), 600B.40 (2013); *Hansen*, 733 N.W.2d at 696. We also look to the non-exclusive considerations articulated in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (including the needs of the child, the characteristics of the parents, the relationship between the child and each parent, and the stability and wholesomeness of the proposed environment). The goal is to assure the child "the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated . . ." Iowa Code § 598.41(1)(a).

We seek to place the child in the environment "most likely to bring [the child] to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695.

On appeal, James claims we should reverse the district court's grant of physical care to Christina because the court did not consider Christina's conflicting testimony, the court misinterpreted the custody evaluation, and the court relied too heavily on a school counselor rather than more credible sources. Upon our de novo review of the record, we agree with the district court's assessments of the parties' respective abilities to encourage the relationship of the children with the other parent. The court took a common sense approach in evaluating the testimony and evidence presented. The court made credibility determinations throughout its opinion, and provided an accurate summary for both parties:

> The custody issue presented in this case was exceedingly difficult. Both parties have significant shortcomings. On his part, the petitioner has a personality disorder. By definition, by being diagnosed with such a disorder, this means that the traits of the disorder are so extreme that they interfere with normal patterns of living and relationships. The personality disorder has interfered with the normal patterns of living in this family. On his part, [James], for example, failed to recognize that [Christina] was being considerate and giving when she shoveled snow. Instead he was critical of her execution of that project. Instead of a warm "thanks," he gave a cold shoulder. Instead of recognizing the early and long hours worked by [Christina] and the sacrifice of selling her own blood, he criticized her for the predictable result of such efforts.
> On her part, the [Christina] demonstrates traits of narcissism. During this divorce process, [Christina] has not always acted in the children's best interests. But, she has expressed a willingness to put aside the acrimony and animosity and make shared care work. [James] has not expressed such willingness. Had [James] expressed a willingness to attempt a fresh start, the results of this case may have been different. Instead his approach is exclusionary, including an attempt to literally deny his children

access to their mother except under supervised situations. The denial of such contact with these children would have a profound and negative effect on these little girls. That [James] does not recognize this and, instead, advocates for such an outcome plays a large role in the court's ultimate decision.

We affirm the district court's grant of physical care to Christina.

**B.     Marital Home**

James claims the district court failed to equitably distribute the parties' property because it did not require Christina to refinance the marital home, resulting in James remaining liable for the note for the next thirteen years.

Iowa courts strive to divide marital property equitably between divorcing spouses based on the factors set out in Iowa Code section 598.21(5). But an equitable division is not necessarily an equal division. *Hansen*, 733 N.W.2d at 702. The factors relevant to this case include the length of the marriage; the property brought into the marriage; the contribution of each party to the marriage, giving appropriate economic value to each party's contribution and homemaking; the earning capacity of each party; and other economic circumstances of each party. *See* Iowa Code § 598.21(5).

Upon our de novo review of the record, we find Christina should attempt to assume the mortgage on the home to relieve James of his liability on the note. Christina testified she was aware the home was titled only in James's name and that she was willing to have the home refinanced in her name. She testified she could afford the mortgage payments with the assistance provided by James's child support payments. While the parties' agreement the children should remain in the martial home is significant, it may be impractical if Christina is not able to assume the liability. The provision intending to compensate James for this

obligation—half of the proceeds of the future sale—creates a future contingency difficult to manage in the property division. If Christina is unable to assume the liability on the note and mortgage, the house must be sold and the net proceeds divided. "Where possible a trial court should divide assets rather than decree joint ownership of assets. Joint ownership frequently results in problems at a later date." *In re Marriage of Mentel*, 359 N.W.2d 505, 506 (Iowa Ct. App. 1984). We find the most equitable division of the marital home is to require Christina to assume the liability on the mortgage and note within six months from the filing of this opinion. If Christina is unable to do so, the home must be sold and the proceeds or deficit from the sale shall be divided equally between the parties. Therefore we modify section (a) of the dissolution decree to state:

> Recipient of 1203 N. Thornwood. Exclusive possession of this real estate and the obligation to pay the note secured by the mortgage encumbering this real estate should be awarded to Christina for the reasons set forth above. Within six months from the issuance of this opinion, Christina shall assume the liability on the note and mortgage in her name only. If Christina is unable to assume the liability on the home, the home must be sold and the net proceeds or deficit of the sale shall be divided equally between the parties.

### C.    Other Property

James claims the district court inequitably assigned Christina the tax refund and Christina's student loans should not have been included as a marital debt. The district court noted that each party would leave the marriage with approximately the same negative net worth: Christina would have a negative net worth of $27,286, and James would have a negative net worth of $27,512. The court awarded Christina the tax refund to "more equalize the award of assets and debts." The record before the district court regarding the student loan debt is

sparse, and James provides no citations or argument on appeal, other than claiming the allocation of student debt to Christina is inequitable. The liability for the student loan debt was solely assigned to Christina and other debts were assigned to James in the district court's allocation of debt. Particularly in light of our order that Christina assume the note on the marital home, we find allocation of the student debt and the tax refund to Christina to be equitable.

### D. Attorney Fees

Christina requests costs and reasonable attorney fees. An award of attorney fees is not a matter of right and rests within our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We determine whether an award is appropriate considering the needs of the party seeking the award, the other party's ability to pay, and whether the appeal required a party to defend the district court's decision. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct .App. 2007). With these considerations in mind, we split costs equally and decline to award attorney fees.

## IV. CONCLUSION

We affirm the district court's grant of physical care to Christina. We find the district court's disposition of the marital home was inequitable and we modify the decree to require Christina to assume the liability on the mortgage and note within six months from the issuance of this opinion, or if she is not able to do so, the parties must sell the home. Further, we find the district court's distribution of the parties' debts and assets was equitable. We split costs equally and decline to award attorney fees.

**AFFIRMED AS MODIFIED.**