# IN THE COURT OF APPEALS OF IOWA

No. 18-1451
Filed May 15, 2019

**KELLY HOPE TORRES,**
        Petitioner-Appellant,

**vs.**

**DANIEL ELDON MORRISON,**
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Woodbury County, Tod J. Deck,

Judge.

Kelly Torres appeals a district court order modifying a custody decree.

**AFFIRMED.**

John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant.

Craig H. Lane of Craig H. Lane, P.C., Sioux City, for appellee.

Considered by Doyle, P.J., Mullins, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MULLINS, Judge.**

Kelly Torres and Daniel Morrison were never married but are the parents of X.M.-T., born in 2009. A stipulated decree establishing custody, visitation, and child support was entered in September 2011. At that time, both parties were residing in Sioux City. The stipulated decree provided for joint legal custody and shared physical care of the child pursuant to a specific parenting-time schedule. In August 2014, the decree was modified by stipulation to provide each of the parties with parenting time on an every-other-week basis.

Daniel is a middle school special education and behavioral teacher. He also works part time at a boys and girls home. Daniel married his current wife, Heather, in October 2016. The marriage produced a son, who was eighteen months old at the time of the modification trial. Heather is a stay-at-home mom. Daniel, Heather, and their son now live in Remsen, which is roughly forty-five minutes away from Sioux City. Kelly continues to reside in Sioux City with her adult son from a prior relationship. Daniel maintains a structured parenting style. Kelly maintains a more freestyle approach to parenting. Daniel is generally supportive of Kelly's relationship with X.M.-T. Kelly appears to be unsupportive of X.M.-T.'s relationship with Daniel; she says negative things about Daniel in front of X.M.-T. Examples of these types of comments include statements that Daniel does not love him anymore or Daniel loves his younger son more than he loves X.M.-T.

The evidence shows the continuing viability of the shared-physical-care arrangement has deteriorated since the last modification, largely as a result of Kelly's conduct. For example, in the spring of 2015, there was an incident in which, according to Daniel's testimony, Kelly came to Daniel's residence and threw

somewhat of a tantrum as a result of Daniel making the child eat steak for dinner instead of what the child wanted, chicken. According to Kelly's testimony, she came to the residence upon concerns that Daniel was physically abusing the child. Kelly ultimately called the police. When the police arrived, Kelly told the officers she observed Daniel throw the child down. Officers inspected the child. No criminal charges were filed. Then, in June, there was an incident at Daniel's church in which Kelly essentially showed up and took the child during Daniel's parenting time. A similar incident occurred following one of the child's t-ball games in June 2016.

In mid-September 2016, a few weeks before Daniel and Heather were to be married, there was a disagreement between Daniel and Kelly concerning one of the child's doctor's appointments. Kelly alleges Daniel physically assaulted her during this episode. Her claim is wholly unsubstantiated. Shortly thereafter, Kelly filed a petition for relief from domestic abuse against Daniel. A temporary protective order was initially entered prohibiting Daniel from contacting X.M.-T., which would have prevented the child from attending Daniel's wedding. However, the district court struck that part of the order shortly before the wedding. Kelly's petition for relief was ultimately denied because she "failed to meet her burden of proof that an assault occurred." On September 22, Kelly filed a petition requesting modification of the physical-care provisions of the custody decree, alleging Daniel "has physically abused [Kelly] and the parties' child." Daniel counterclaimed for sole legal custody and physical care. About a week after Kelly filed her modification petition, Kelly reported to the Iowa Department of Human Services (DHS) that Daniel physically abused her and the child. A child-abuse assessment

was conducted, which resulted in a not-confirmed finding. There is evidence that Kelly coached the child to report negative things about Daniel during the investigation. More than a year later, in November 2017, Kelly reported to DHS that Daniel physically abused his younger son. An investigation likewise resulted in a not-confirmed finding. Again, there is evidence that Kelly coached X.M.-T. in relation to this investigation.

Kelly agreed in her testimony that she has contacted law enforcement to conduct welfare checks at Daniel's residence on several occasions, too many times to count. As the district court noted, "There was no credible evidence presented to support the reasonableness of any of these 'welfare checks.'" Generally speaking, since the decree was modified in 2014, the parties' ability to effectively communicate in furtherance of the child's best interests has languished.

Prior to the modification trial, Kelly withdrew her request for modification of physical care. Daniel continued to seek modification of custody and physical care. In its subsequent modification ruling, the court declined to modify legal custody but awarded Daniel physical care with liberal visitation for Kelly. The court also modified other provisions of the decree relative to the modification of physical care. The court denied Kelly's motion to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). Kelly appeals. She argues Daniel did not meet his burden to show a substantial change in circumstances or that he has a superior ability to minister to the child's needs.

Appellate review of an equitable action to modify the physical-care provisions of a custody decree is de novo. *See* Iowa R. App. P. 6.907; *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002); *see also In re Marriage of*

*Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). The best interests of the child is our primary consideration. Iowa R. App. P. 6.904(3)(o); *Hoffman*, 867 N.W.2d at 32.

The following principles apply to modification of the physical-care provisions of a custody decree:

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the [child's] best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the child[]. A parent seeking to take custody from the other must prove an ability to minister more effectively to the [child's] well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

On appeal, Kelly agrees "the record is filled with incidents of tension, selfishness and anger." However, she argues the circumstances show "the parties can effectively co-parent and communicate when it comes to" furthering the child's best interests and, therefore, no change in circumstances has occurred. Upon our de novo review, we disagree. Kelly has deliberately made unsubstantiated claims against Daniel in her apparent quest to extricate him from the child's life. Daniel has taken the high road and chosen not to follow suit by engaging in similar tactics. We have no doubt the acrimony between the parties resulting from Kelly's conduct is the root of the child's anxiety and related mental-health issues. Simply stated,

"[t]he shared custody provisions agreed to by these parties and incorporated into the decree have not evolved as envisioned by either of the parties or the court." *Melchiori*, 644 N.W.2d at 368. The discord between the parties has had a disruptive effect on the child and amounts to a substantial change in circumstances warranting modification of the physical-care provisions of the decree. *See id.* The fact that Kelly has continued in her tirade over several years shows the change in circumstances is "more or less permanent, not temporary." *See Frederici*, 338 N.W.2d at 158. We conclude Daniel met his burden to show a substantial change in circumstances.

We turn to whether Daniel met his burden to show he has a superior ability to minister to the child's well-being. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016); *Frederici*, 338 N.W.2d at 158. Our primary consideration in making this determination is the long-term best interests of the child. *See In re Marriage of Zabecki*, 389 N.W.2d 396, 395 (Iowa 1986). "Prior cases are of little precedential value, except to provide a framework for our analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).

"The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3)" (2016). *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa Court App. 1996). "Although Iowa Code section 598.41(3) does not directly apply to *physical care* decisions, . . . the factors listed here as well as other facts and circumstances are relevant in determining" physical care. *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). "In determining which parent serves the child's best interests, the objective is to place the child in an environment most

likely to bring the child to healthy physical, mental, and social maturity." *Courtade*, 560 N.W.2d at 38. The following factors are relevant to the determination of which parent can more effectively minister to the child's long-term well-being in this case: (1) whether each parent would be a suitable custodian, (2) whether the child will suffer due to lack of active contact with and attention from both parents, (3) whether the parents can effectively communicate about the child's needs, (4) whether both parents have actively cared for the child, (5) whether each parent can support the other's relationship with the child, (6) whether one or both parents agree to or oppose shared physical care, and (7) the geographic proximity of the parents. *See* Iowa Code § 598.41(3). We also note our consideration of the characteristics of the child and parents, the child's needs and the parents' capacity and interests in meeting the same, the relationships between the parents and child, the effect of continuing or disrupting an existing physical-care arrangement, the nature of each proposed environment, and any other relevant matter disclosed by the evidence. *See In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).

We acknowledge that neither parent is perfect nor a bad parent. "Determining what custodial arrangement will best serve the long-range interest of a child frequently becomes a matter of choosing the least detrimental available alternative for safeguarding the child's growth and development." *Id.* at 167. Upon our de novo review of the record and consideration of the foregoing factors, we agree with the district court that Daniel met his burden to show he can provide superior care to the child. That is not to say that we think Daniel can provide perfect care, or that Kelly has not historically provided good care; we only conclude placement in Daniel's physical care will be "most likely to bring the child to healthy

physical, mental, and social maturity." *See Courtade*, 560 N.W.2d at 38. Consequently, we affirm the district court's modification ruling.

Daniel requests an award of appellate attorney fees. *See* Iowa Code § 600B.26; *Schaffer v. Frank Moyer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding that a statute allowing an award of trial attorney fees permits an award of appellate attorney fees as well). An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* Although we acknowledge Daniel was required to defend the modification ruling on appeal, in consideration of the foregoing factors, we deny Daniel's request for fees. Costs on appeal are assessed to Kelly.

**AFFIRMED.**