# IN THE COURT OF APPEALS OF IOWA

No. 20-0947
Filed August 18, 2021

IN RE THE MARRIAGE OF ERIC LOUIS IRWIN
AND JONI KAY IRWIN

Upon the Petition of
ERIC LOUIS IRWIN,
     Petitioner-Appellant,

And Concerning
JONI KAY IRWIN,
     Respondent-Appellee.

_____

Appeal from the Iowa District Court for O'Brien County, Don E. Courtney, Judge.

Eric Irwin appeals from the decree dissolving his marriage. **AFFIRMED.**

Matthew G. Sease and Kylie E. Crawford (until withdrawal) of Sease & Wadding, Des Moines, and Randall G. Sease, Hartley, for appellant.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

Considered by Mullins, P.J., May, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAY, Judge.**

Eric Irwin appeals from the decree dissolving his marriage to Joni Irwin. We affirm.

**I. Background Facts**

Eric and Joni married in 1996. Three children were born from the marriage. Both parents worked in the various businesses they started together. And Joni served as the children's primary caregiver.

The couple's relationship was unsteady. Joni left the familial home several times. When she left, Joni would take L.I., the couple's youngest child, with her. In December 2017, the couple separated for good. Eric stayed in the marital home with the couple's middle child, H.I. Joni and L.I. eventually moved into a home the couple owns and had previously lived in.[1]

After separating, Eric focused his attention on various businesses including: a taxidermy shop; a car wash; and a business venture he shared with his mother, running three apartment complexes. Joni ran a restaurant the parties owned.

Beginning in July 2018, the parents alternated physical care of L.I. every other week. This arrangement continued up to trial.

The district court heard testimony over three days. Eric's apartment business venture with his mother turned into a major point of contention. Joni claimed Eric owned half of the apartment complexes and pointed to several pieces of evidence to support her claim. Eric claimed he never owned a portion of the apartments; instead, he claimed they were owned by a trust with his mother as

---

[1] The Eric and Joni's oldest child was an adult and no longer living with them at the time of separation. H.I. turned eighteen after the couple separated.

trustee. The district court stated it was "left with the impression and finds that Jean and Eric Irwin intended for Eric to have a one half interest in [the apartments.]" However, the court concluded "it ha[d] no authority to transfer ownership of these apartments from the trust to Eric and Jean Irwin as joint tenants." The court did conclude it was able to consider "the conduct of Eric in determining a fair distribution of property and in whether alimony is appropriate under the circumstances of this case."

With respect to L.I., the court determined joint physical care was not in L.I.'s best interest. Instead the court found "that Joni can best meet the best interests of [L.I.] and place[d] physical care of [L.I.] with Joni."

Eric appeals. Additional facts will be discussed as necessary.

## II. Scope and Standard of Review

Dissolution proceedings are reviewed de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). However, we afford deference to the district court's factual findings, "particularly when considering the credibility of witnesses, but we are not bound by them." *In re Marriage of Fox*, 559 N.W.2d 26, 28 (Iowa 1997). We will only "disturb the district court's 'ruling only where there has been a failure to do equity.'" *McDermott*, 827 N.W.2d at 676 (citation omitted); *see also In re P.C.*, No. 16-0893, 2016 WL 4379580, at *2 (Iowa Ct. App. Aug. 17, 2016) (identifying "reasons to exercise 'de novo review with deference,' including: notions of judicial comity and respect; recognition of the appellate court's limited function of maintaining the uniformity of legal doctrine; recognition of the district court's more intimate knowledge of and familiarity with the parties, the lawyers, and the facts of a case; and recognition there are often undercurrents in a case—

not of record and available for appellate review—the district court does and should take into account when making a decision").

## III. Discussion

### *A. Physical Care*

First, Eric argues the district court should have placed physical care with him or, in the alternative, ordered joint physical care. We consider what physical care arrangement is in L.I.'s best interest. *See* Iowa R. App. P. 6.904(3)(o). "The objective of a physical care determination is to place the child[ ] in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). [T]he court may award joint physical care to both joint custodial parents upon the request of either parent." Iowa Code § 598.41(5)(a) (2018). "If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child." *Id.*

Caselaw provides "a nonexclusive list of factors to be considered when determining whether a joint physical care arrangement is in the best interest[ ] of the child." *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007).

> The factors are (1) "approximation"—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*Id.* (quoting *Hansen*, 733 N.W.2d at 697–99). "The court may also consider any other relevant factors." *In re Marriage of Monat*, No. 18-0884, 2019 WL 1057310, at *3 (Iowa Ct. App. Mar. 6, 2019).

Like the district court, our review of these factors leads us to conclude joint physical care is not appropriate for this family. Joni has historically served as L.I.'s main caretaker, though both parents provided care for L.I. before the dissolution proceedings. Also, the degree of conflict between Eric and Joni is significant. They struggle to communicate effectively and they do not show each other mutual respect. This is shown by their text message exchanges and by Eric's own admission. Moreover, the record suggests the joint physical care arrangement the parties exercised prior to trial was hard on L.I. *See Id.* at *4 (considering whether a temporary joint physical care arrangement worked well for the children when determining whether a permanent joint physical care arrangement would be in their best interests). So we do not think it is in her best interest to continue such an arrangement.

So we consider whether the district court should have placed physical care with Eric instead of Joni. In determining which parent should have physical care, the court focuses on the "goals of stability and continuity with an eye toward providing the children with the best environment possible for their continued development and growth." *Hansen*, 733 N.W.2d at 700. The parent awarded physical care must also "support the other parent's relationship with the child." *Id.* "There is no preference for mothers over fathers, or vice versa." *Id.*

On our de novo review of the record, we find the district court's assignment of physical care to be in L.I.'s best interest. Neither parent is particularly supportive

of other's relationship with L.I. But Joni has historically served as L.I.'s primary caretaker. She more attuned to L.I.'s needs. So we think it best for L.I. to place physical care with Joni.

*B. Property distribution*

Next, Eric challenges the property distribution. Eric argues, "In this case, the district court erred in its property division by using it as a reason to punish Eric for Joni's failure to obtain a declaratory judgment that Eric was a partial owner of the Prairie Wind Apartments and the parties' failure to recognize a lack of legal title to those apartments."

We disagree. The district court did not "punish Eric." Rather, the court sought to reach an equitable property distribution, as our law requires. "Iowa is an equitable distribution state." *McDermott*, 827 N.W.2d at 678. "Although an equal division is not required, it is generally recognized that equality is often most equitable." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 683 (Iowa 2005). However, a "party's greater need for assets may warrant a larger property award." *Monat*, 2019 WL 1057310, at *4. When distributing property, the court considers the following factors:

> a. The length of the marriage.
> b. The property brought to the marriage by each party.
> c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
> d. The age and physical and emotional health of the parties.
> e. The contribution by one party to the education, training, or increased earning power of the other.
> f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a

standard of living reasonably comparable to that enjoyed during the marriage.

g. The desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children, or if the parties have joint legal custody, to the party having physical care of the children.

h. The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.

i. Other economic circumstances of each party, including pension benefits, vested or unvested. Future interests may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.

j. The tax consequences to each party.

k. Any written agreement made by the parties concerning property distribution.

l. The provisions of an antenuptial agreement.

m. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21(5). Here, the court reviewed all of the evidence before it—including evidence Eric has some unreported interest in the apartment business venture—and then applied the relevant factors to reach an equitable property division under these unique facts. Because the court did not "fail to do equity," we decline to disturb the court's ruling. *See McDermott*, 827 N.W.2d at 676.

*C. Appellate attorney fees*

Joni requests appellate attorney fees. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *McDermott*, 827 N.W.2d at 687 (citation omitted). Upon consideration of these factors, we decline to award Joni appellate attorney fees. Costs of this appeal are taxed to Eric. *See*

*In re Marriage of Mack*, No. 17-1568, 2018 WL 4360947, at *10 (Iowa Ct. App. Sept. 12, 2018).

**AFFIRMED.**