In re The MARRIAGE OF Sheri
R. BERNING and Vernon
R. Berning

Upon the Petition of Sheri R. Berning
n/k/a Sheri R. Carter, Petitioner–
Appellant,

And Concerning Vernon R. Berning,
Respondent–Appellee.

No. 07–0371.

Court of Appeals of Iowa.

Dec. 12, 2007.

Andrew B. Howie of Hudson, Mallaney & Shindler, P.C., West Des Moines, for appellant.

Kirke C. Quinn, Boone, for appellee.

Heard by HUITINK, P.J., and MILLER and EISENHAUER, JJ.

HUITINK, P.J.

Sheri Berning appeals the physical care provisions of the district court's dissolution decree. We affirm.

## I. Background Facts and Proceedings

Vern and Sheri Berning began living together in 1999. Sheri gave birth to their son, Ethan, in June 2001. Vern and Sheri were married in 2003.

Sheri was forty years old and working as a teacher's aide at the time of the dissolution hearing. She was married previously. This previous marriage produced two children. The children were placed with their father pursuant to the 1992 dissolution decree.

Vern was fifty-three years old at the time of the dissolution hearing. Vern has been employed with the railroad since 1978. He works a unique work schedule where he works eight consecutive days, often away from home, and then does not work for the next seven consecutive days. Vern was also previously married. This previous marriage produced two children, one of whom was placed with Vern pursuant to the dissolution decree. Both children are now adults living outside of the home.

Sheri took twelve weeks of family leave from work to care for Ethan when he was born. In February 2003 Sheri left her job for eight months and stayed home to care for Ethan. She began working again in October 2003, and Ethan was placed in daycare.

Sheri filed a petition for dissolution of marriage on March 31, 2006. Sheri and Ethan moved to a new residence a few miles away. Shortly after the petition was filed Vern, without advice from counsel, signed a stipulation indicating that Sheri would have temporary physical care and he would receive "reasonable and liberal visitation as agreed between the parties." Vern also agreed to pay $587.68 per month in child support.

Vern and Sheri met with a licensed psychologist on four occasions for their marital difficulties, and then met individually with the psychologist on other occasions. Sheri stopped attending the counseling sessions, but Vern continued on. Sheri met a man over the Internet and began traveling to Canada to visit him. Ethan stayed with Vern during Sheri's numerous trips to Canada.

The parties eventually agreed to an arrangement whereby they would alternate care for the child. Vern cared for Ethan during the seven days he was off from work, and Sheri cared for Ethan during the eight days he was away at work. However, in late August Sheri determined this schedule was not appropriate during the school year so she decided to end the arrangement. Vern filed a motion to modify temporary custody, and the court ordered that Sheri would have temporary physical care and Vern would have visitation from Thursday evening through Sunday during the weeks he was not working.

At the dissolution hearing, Sheri requested primary physical care, and Vern requested joint physical care. On January 3, 2007, the district court entered an order awarding both parties joint physical care. The physical care arrangement shadowed Vern's work schedule. The court also distributed the marital assets, ordered Vern

to pay a reduced amount of monthly child support, and ordered him to pay a portion of Sheri's attorney fees.

On appeal, Sheri claims the district court erred in granting joint physical care. Vern resists, arguing the joint physical care arrangement is appropriate. Both parties request appellate attorney fees.

## II. Standard of Review

■ We review claimed error in dissolution of marriage decrees de novo. *See In re Marriage of Sullins,* 715 N.W.2d 242, 247 (Iowa 2006). "Although we decide the issues raised on appeal anew, we give weight to the trial court's factual findings, especially with respect to the credibility of the witnesses." *In re Marriage of Witten,* 672 N.W.2d 768, 778 (Iowa 2003).

## III. Applicable Law

"Joint physical care" means an award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child. Iowa Code § 598.1(4) (2005). The rights and responsibilities include, but are not limited to, shared parenting time with the child, maintaining homes for the child, and providing routine care for the child. *Id.* With joint physical care, "neither parent has physical care rights superior to the other parent." *Id.* Iowa Code section 598.41(5)(a) (Supp. 2005) provides:

> If joint legal custody is awarded to both parents, the court may award joint physical care to both joint custodial parents upon the request of either parent.... If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child.

■ Our supreme court recently devised a nonexclusive list of factors to be considered when determining whether a joint physical care arrangement is in the best interests of the child. *In re Marriage of Hansen,* 733 N.W.2d 683, 697 (Iowa 2007). The factors are (1) "approximation"—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters." *Id.* at 697–99.

## IV. Merits

■ Generally, we give considerable deference to the district court's credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown,* 487 N.W.2d 331, 332 (Iowa 1992). The district court noted it was "somewhat skeptical of Sheri's credibility" in this case. This credibility finding is reflected throughout the court's ruling.

Upon our de novo review of the record, we agree with this court's credibility finding. Sheri's testimony in this case paints a much different picture than that of other witnesses who have no interest in this case. For example, Sheri contends that she and Ethan's preschool teacher determined Ethan's behavioral problems at preschool coincided with his visits with Vern. However, the preschool teacher's testimony revealed no such correlation; instead, she labeled his behavioral problems as "sporadic." Also, Sheri's description of an incident at the daycare provider where she called the sheriff to keep Vern from taking Ethan contradicts the provider's description of the incident and the proportionate response by the authorities. Finally, the

psychologist who counseled both parties testified that Sheri was originally amenable to a joint care arrangement. However, Sheri said she never told the psychologist she was amenable to a joint care arrangement. Accordingly, we give considerable weight to the district court's credibility determination.

■ *Approximation.* Sheri argues the district court should have granted her primary physical care because she was Ethan's primary caregiver. As noted in her appellate brief, "When Vern was gone [for work], Sheri took care of Ethan 100% of the time. When Vern was home from work, at best, he took care of Ethan 50% of the time." She also points out that she has played a larger role in taking Ethan to routine doctor and dentist appointments.

While the proportionate amount of time spent with each parent prior to the dissolution is a significant factor in determining the post-dissolution physical care arrangement, there are several factors mitigating its importance in this case.

The record reveals that Vern has been a very active and interested parent since Ethan's birth. Sheri's attempts to argue that Vern's interest and care for Ethan was limited prior to the separation are belied by the record. For example, Ethan's former daycare provider, who had known the family long before the separation, described Vern as an "excellent father" who always put Ethan's needs in the forefront. Likewise, Ethan's preschool teacher for the past two years testified that Vern had a positive relationship with his son and that Vern was a concerned and good parent. Also, the family psychologist testified that Vern was "imminently capable" of being a stable parent for Ethan.

Finally, when Sheri wanted to travel to Canada to see her boyfriend, she had no hesitation leaving Ethan with Vern for extended periods of time.

We also find approximation is mitigated in this case because Ethan has spent a considerable portion of his life in daycare or pre-school.[1] There have been short spans of time where Sheri stayed home with Ethan, but this time at home with Ethan is outweighed by the amount of time he has spent in daycare or preschool while both parents worked.

In sum, Sheri's role as the predominant caretaker is a factor in this case, but it is not an overwhelming factor mandating that she be awarded physical care of Ethan.

*Communication and Conflict.* Sheri points to several incidents that allegedly demonstrate a lack of communication and conflict between herself and Vern. The district court minimized these incidents and noted the parties "appearance in Court and contact during separation did not suggest an adversarial relationship." The psychologist who counseled both Sheri and Vern agreed that there was a level of tension between the two parents, but found the tension was not extraordinary. He also testified that he did not believe the tension would prohibit a split custody arrangement. We, like the district court, find Sheri's claims concerning the parties' inability to communicate are overstated. After a thorough review of the record, we find there is no reason to conclude the existing communication or level of respect between the parties would be a significant impediment to joint physical care.

*Daily Matters of Care.* Sheri claims both parents cannot agree on the daily

1. Ethan began the preschool program at age three. Ethan goes to an after school daycare when preschool is over.

matters of child care. Upon our review of the record, we find little support for these assertions because both parents appear to be operating on the same page as to child rearing style and discipline.

*Unique Schedule.* Sheri also argues that a custody arrangement which follows Vern's unique work schedule is too disruptive for Ethan. She contends that Ethan needs stability, and Vern's eight-day-on and seven-day-off work schedule will mean that Ethan will never have a set routine as to what days of the school week he stays with his father and what days he spends with his mother.

Vern has worked this unique schedule during Ethan's entire life. This schedule may be untraditional, but it is also relatively stable and provides Ethan with a substantial amount of time with his father. Any other visitation or physical care arrangement would still need to be adjusted to accommodate Vern's work schedule. On balance, we find the ordered schedule serves Ethan's best interests as it provides him with the maximum amount of contact with his two loving parents.

After reviewing all of the evidence through the lens of the foregoing factors, we find the district court properly awarded joint physical care in this case. The district court's findings concerning the parties' abilities to communicate and express mutual respect for each other are amply supported by the evidence, and we adopt them as are own. Accordingly, we deny Sheri's request for physical care and affirm the district court's award of joint physical care.

## V. Attorney Fees

██ Both parties seek attorney fees for this appeal. An award of appellate attorney fees is not a matter of right, but rests within our discretion. *In re Marriage of Kurtt,* 561 N.W.2d 385, 389 (Iowa Ct.App.1997). We consider the needs of the party making the request, the ability of the other party to pay, and whether the party was required to defend the district court's decision on appeal. *Id.* After considering these factors, we decline to award appellate attorney fees to either party.

## VI. Conclusion

Having considered all issues presented on appeal, whether or not specifically addressed in this opinion, we find the custody and placement provisions set forth by the district court are appropriate.

**AFFIRMED.**