# IN THE COURT OF APPEALS OF IOWA

No. 18-1833
Filed April 7, 2019

**CHRISTOPHER HANS GRANSTRA,**
Petitioner-Appellant,

**vs.**

**SHEA BRIANNE DRIESEN,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for O'Brien County, Charles Borth, District Judge.

A father appeals a decree establishing paternity, custody, visitation, and child support. **AFFIRMED.**

Matthew G. Sease of Kemp & Sease, Des Moines, for appellant.

Jenny L. Winterfeld of Winterfeld Law, P.L.C., Sioux Center, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**VAITHESWARAN, Presiding Judge.**

Christopher Granstra and Shea Driesen are the unmarried parents of a child, born in 2017. Following trial on Granstra's petition to establish paternity, custody, and visitation, the district court granted Driesen physical care of the child. The court reasoned:

> [Driesen] has been the primary caretaker for [the child] her entire life. She has also been the primary caretaker of her older son . . . . [The child] and [the older half-sibling] are only separated in age by approximately four years. They have a strong bond with each other. The record establishes that under [Driesen's] care, these children are both well-adjusted and appropriately developed children. The successful caregiving by one parent in the past is a strong predictor that future care of the child will be of the same quality. While [Driesen] had some instances of poor judgment following her separation from [Granstra], she seems to have again stabilized after a short bout with immaturity. Even during her issues, she never did anything which would put either of the children in danger. Along with [Granstra], the court is concerned about [Driesen's] living arrangement due to the fact that the home in which she is residing has been foreclosed upon. No execution has yet been filed, however, nor has any sheriff's sale been scheduled. [Driesen's boyfriend] testified that he is actively seeking new employment and working to obtain mortgage assistance in order to remain in the home. In the unfortunate event they must find alternative living arrangements, nothing in the record indicates they would absolutely be unable to do so. In the meantime, this is the home that [the child] has known for the past several months. As shown by photographic evidence in the record, the home is well-maintained.

On appeal, Granstra contends the court should have granted him physical care of the child. In his view, (A) he "offers more stability than [Driesen]"; (B) he "will better promote a healthy relationship between [Driesen] and all family members"; (C) "Driesen does not make decisions based upon the best interests of [the child]"; (D) "[Driesen's] relationship with [her boyfriend] was not given appropriate weight"; and (E) the "court gave too much weight to [the child's] relationship with" her older half-sibling. Driesen seeks appellate attorney fees.

## I.    *Physical Care*

Our analysis of who should have physical care is the same whether the parents are married or unmarried.  *Lambert v. Everist,* 418 N.W.2d 40, 42 (Iowa 1988).  Specifically, we apply the factors set forth in our chapter on dissolutions of marriage.  *Id.*; *see* Iowa Code §§ 598.41(3), 600B.40(2) (2018).  Our review is de novo.  *See McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010).

*A. Stability.*  Granstra argues the court "gave undue weight [to Driesen's] purported history as primary caregiver" and did not consider that he "provides more stability."   *See* Iowa Code § 598.41(3)(a) (considering "[w]hether each parent would be a suitable custodian for the child"), (d) (considering "[w]hether both parents have actively cared for the child before and since the separation").  He points to his ownership of a home in which the child was born, his steady employment, and the availability of extended family support "within the area."  He asserts Driesen, in contrast, was at imminent risk of losing the home she shared with her boyfriend, had "several jobs," and moved constantly.

Granstra did indeed have more stable housing than Driesen.  He purchased an acreage with a five-bedroom home while he was involved with Driesen, and he remained in the home after his breakup with her.  Driesen, on the other hand, lived with a new boyfriend whose home was the subject of a foreclosure decree.  However, the house had yet to be sold at a sheriff's sale and Driesen remained on the property at the time of trial.  Driesen's boyfriend testified he was told "the foreclosure [was] actually on hold" and he might get "a mortgage modification."

Granstra also had a steady job that paid well.  But Driesen's job history was not as checkered as Granstra made out.  She worked at two nursing homes as a

certified nurse's assistant. Later she provided in-home daycare for her children and others.

As for Driesen's moves, they were not as numerous as Granstra suggested. When the child was eight months old, Granstra kicked Driesen out of his home. Driesen moved to her mother's home with the child and her three-and-a-half year old son from another relationship. She stayed with her mother for four or five months before moving in with her boyfriend of two months.

On this record, we conclude Driesen's life was not so unstable as to preclude her from exercising physical care of the child. Granstra conceded as much when he expressed a willingness to have Driesen provide daycare for the child during his twelve-hour workdays.

*B. Promoting Relationship with Other Parent and Family Members.* Granstra argues he would do better than Driesen at supporting the child's relationship with the other parent. *See id.* § 598.41(3)(e) (considering "[w]hether each parent can support the other parent's relationship with the child"). Both parents had room to improve on this score. At the same time, both acknowledged the importance of the other parent in the child's life and largely cooperated with exchanges of the child. Driesen, as temporary caretaker, adjusted visitation to accommodate Granstra's work schedule. These adjustments boded well for the child's well-being.

As for Granstra's relationship with other family members, there is no question he kept the lines of communication open with the child's maternal grandmother. Indeed, at one point, the maternal grandmother spoke more to Granstra than Driesen, expressing concern about Driesen's alcohol consumption

and romances and the potential effect on her children. In time, the grandmother repaired her relationship with Driesen, communicated with her on a daily basis, and visited the children approximately twice a week. She acknowledged Driesen is a good mother. Driesen's sister also acknowledged that "[t]hings have gotten better," despite Driesen's poor choices in the past.

*C. Best Interests of Child.* Granstra argues Driesen did not act in the child's best interests. *See* Iowa R. App. P. 6.904(3)(o). He points to her alcohol usage and romantic relationships, in addition to her moves, which we have already addressed.

Driesen's post-separation behaviors give us pause. As noted, both her mother and sister expressed concern about the extent of her alcohol use and her serial romantic associations. Driesen attempted to dispel their concerns but, in our view, her trial testimony confirmed reasons for uneasiness. That said, even Granstra admitted Driesen was a good mother—so good that he was willing to entrust the child's care to her for twelve hours a day. And Granstra conceded Driesen served as the child's primary caretaker throughout the child's life.

*D. Driesen's Relationship with her Boyfriend.* Granstra takes issue with the fact that Driesen moved in with her new boyfriend "[a]fter only two (2) months of knowing him and less than five (5) months after" her separation from him. He points to the boyfriend's criminal history and his financial circumstances.

The boyfriend did indeed have a history of theft and escape dating back to 2004. Nonetheless, Driesen stated she had no concerns for the safety of her children. The child's maternal grandmother also acknowledged the boyfriend "actually interact[ed] with [the children] pretty well." Although there was some

question as to whether the boyfriend was committed to a long-term relationship with Driesen, our record contains scant evidence he posed a threat to the child.

*E. Half-sibling Relationship.* Granstra contends the district court placed too much weight on the child's relationship with her half-sibling. *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). We disagree. Witnesses uniformly testified to the close relationship between the children. Driesen's boyfriend noted they were "inseparable," and even Granstra acknowledged they "get along good."

We conclude the district court acted equitably in granting Driesen rather than Granstra physical care of the child. Although Driesen showed signs of immaturity, the district court appropriately weighed those signs against her history of primary and appropriate caretaking. We affirm the court's decree.

## II.    Appellate Attorney Fees

Driesen seeks an award of $5500 in appellate attorney fees. We conclude Granstra has the financial ability to pay a portion of her attorney fee bill. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). He earned more than $90,000 annually, whereas Driesen earned approximately $15,000. And Driesen prevailed. Accordingly, we order Granstra to pay $3000 toward that obligation.

**AFFIRMED.**