**IN THE COURT OF APPEALS OF IOWA**

No. 18-2047
Filed October 9, 2019


**IN RE THE MARRIAGE OF LAURA ELIZABETH O'TOOLE
AND SEAN DAVID O'TOOLE**

**Upon the Petition of
LAURA ELIZABETH O'TOOLE,**
        Petitioner-Appellee,

**And Concerning
SEAN DAVID O'TOOLE,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Scott County, Thomas G. Reidel,

Judge.


        Sean O'Toole appeals several provisions of the decree dissolving his

marriage to Laura O'Toole. **AFFIRMED AS MODIFIED.**


        Jennie L. Clausen and Ryan M. Beckenbaugh of H.J. Dane Law Office,

Davenport, for appellant.

        Jennifer M. Triner Olsen of Olsen Law Firm, Davenport, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Sean and Laura O'Toole married in 2010 and divorced in 2018. They have one child, born in 2016. The district court granted Laura physical care of the child, subject to visitation with Sean. On appeal, Sean contends the district court acted inequitably in failing to (1) grant the parents joint physical care of the child and (2) provide more expansive visitation.

## I.    *Joint Physical Care*

"Any consideration of joint physical care . . . must . . . be based on Iowa's traditional and statutorily required child custody standard—the best interest of the child." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) (citing Iowa Code § 598.41(5)(a) (2017)). A list of nonexclusive factors for determining a child's best interests is set forth in Iowa Code section 598.41(3). *Id.* at 696. Certain key factors in deciding whether to order joint physical care are (1) "stability and continuity of caregiving," (2) "the ability of spouses to communicate and show mutual respect," (3) "the degree of conflict between parents," and (4) "the degree to which the parents are in general agreement about their approach to daily matters." *Id.* at 696–99. Other case-specific factors also may bear on the decision. *Id.* at 699–700.

The district court applied each of the enumerated factors before opting against a joint physical care arrangement. The court determined:

> [J]oint physical custody is not appropriate in this case in light of Laura's role as the primary caregiver during the marriage, the lack of open and complete communication, the parties' different approach to daily matters, and Laura's greater dedication to making decisions that benefit [the child]. . . . [T]he Court believes that both parties are good parents who truly love [the child]. However, Laura has consistently put [the child] at the forefront of her decision-making and

has dedicated herself to being an excellent mother with [the child] as her first priority. While Sean believes that he has acted in the same manner, the evidence does not support this as being true. As noted above, Sean placed his own interests in fun activities such as going out after work, socializing, golfing, and hunting ahead of spending time with [the child]. Sean could do this because he knew that Laura would be home caring for [the child]. After Laura filed for divorce, Sean's amount of time tending to [the child's] needs did increase, which is to Sean's credit. However, Sean continued his poor decision-making by making multiple bad decisions concerning finances and not considering the impact of those decisions, both financially and morally, upon [the child]. In this case, Laura has been the primary custodian and has shown a dedication to placing [the child's] interests at the forefront. The Court finds that Laura is the proper parent to have primary physical care of [the child].

On our de novo review of the record, we find support for the district court's determination.

Laura testified she "was the caretaker" of the child during her nine weeks of maternity leave. After she returned to work, she continued her role as primary caretaker. Although Sean was "there," she stated he was "[n]ot necessarily actively participating" in the child's care. After Laura filed her dissolution petition, Sean began helping with the child's feedings, dinner preparation, and bed and bath time. But, in Laura's words, his involvement was "hit and miss." She testified, "He drank and would come home intoxicated, you know, a couple times a week maybe." Although he cared for the child on his weekends, she stated he had no compunction about staying out late on other occasions because she was at home caring for the child.

Sean disputed Laura's characterization of his involvement with the child. Although he acknowledged Laura saw the child and was "more present" than him, he testified, "[F]or the most part, [he] was active." He described a "very flexible" work schedule and noted that travel obligations took him no more than two to two-

and-a-half hours away from home. He characterized Laura as "controlling" and expressed surprise and dismay on reading her critique of him in her journal.

We recognize certain circumstances militated in favor of a joint physical care arrangement. The parents stayed under the same roof during the divorce proceedings, agreed to an alternate weekend visitation schedule, vacated the home on the weekends of the other parent's visitation, had no large fights during the divorce proceedings, communicated respectfully by text message, and generally accommodated each other. It is also true that Laura did not have "any concerns" with Sean's parenting during his weekend visitation. Finally, Sean expressed a willingness to move close to Laura after the dissolution action was finalized. But, at the end of the day, we are swayed by the district court's unique ability to see the witnesses and assess their demeanor. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). From its vantage point, the district court made detailed credibility findings in favor of Laura. We give weight to those findings. *See* Iowa R. App. P. 6.904(3)(g).

We conclude the district court acted equitably in denying Sean's request for joint physical care.

## II. *Expanded Visitation*

The district court stated the following with respect to visitation:

> In this case, Laura proposed every other weekend and Wednesday night (potentially overnight). Sean believes that this proposal provides too big of a gap between when he is able to see [the child] as there will be a full one-week period on occasion where he does not see [the child]. The Court finds that Sean should be awarded visitation of every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. Sean shall also have visitation every Tuesday and Thursday night from 5:00 p.m. to 7:30 p.m. This provides Sean with continual contact with [the child] and shortens the

amount of time that Sean would ever have to go without seeing [the child]. It provides Sean with meaningful contact with [the child] on 182 days out of the year (3 days every other weekend and two days each week).

The court also granted Sean two weeks of summer visitation.

Sean argues the visitation was insufficient. He asks for two overnights per week and "four weeks of summer visitation if he is granted weekday overnights by this Court, and six weeks of summer visitation if this Court declines to modify weekday visitation."

Generally, liberal visitation rights serve a child's best interests. *See In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa Ct. App. 1991); *see also* Iowa Code § 598.41(1)(a) (stating insofar as is reasonable and in the best interest of the child, the court "shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents"). That is particularly true where there is a "healthy parent-child relationship" with the non-custodial parent. *Toedter*, 473 N.W.2d at 235.

Laura recommended "an overnight [visit] one night a week." The district court opted for two two-and-a-half hour visits per week. Given the geographic proximity of the parents and Sean's active albeit unequal involvement with the child during the divorce proceedings, we modify the visitation portion of the decree to extend the Tuesday evening visit to an overnight visit. The same reasons together with the fact that Sean has extended family in Missouri militate in favor of an expansion of summer visitation. We modify the visitation portion of the decree to

grant Sean four weeks of summer visitation, to be exercised in no more than two uninterrupted week increments at a time, unless otherwise agreed.

### III. Appellate Attorney Fees

Laura seeks an award of $8200 in appellate attorney fees. An award rests within our discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Although Laura was obligated to defend the appeal, Sean raised meritorious claims and prevailed on one of them. In addition, Laura does not earn significantly less income than Sean. For these reasons, we decline her request to have Sean pay her attorney-fee obligation.

**AFFIRMED AS MODIFIED**.