# IN THE COURT OF APPEALS OF IOWA

No. 21-0745
Filed February 16, 2022

**IN RE THE MARRIAGE OF CARLSON SCHINDLER AND BRANDI PREUL**

**Upon the Petition of**
**BRANDI PREUL,**
     Petitioner-Appellee,

**And Concerning**
**CARLSON SCHINDLER,**
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.

Carlson Schindler appeals following a ruling on his petition to modify a

dissolution decree. **AFFIRMED.**

Jessica Shannon of Baer Law Office, Des Moines, for appellant.

Ryan A. Genest of Simpson, Jensen, Abels, Fischer & Bouslog, P.C., Des

Moines, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**VAITHESWARAN, Presiding Judge.**

Carlson Schindler and Brandi Preul married in 2003. They had a child in 2004 and divorced in 2006. The district court approved the parties' stipulation to have Preul exercise physical care subject to visitation as "the parties may agree." Thirteen years later, Schindler filed a petition to modify the decree. He sought "primary care of the minor child." Following trial, the district court denied his request for physical care but concluded "some visitation guidelines are appropriate." The court granted Preul's request to have Schindler pay a portion of her trial attorney fees and ordered Schindler to pay fees incurred by the child's attorney. Schindler appealed.

Schindler does not challenge the district court's denial of his request to modify the physical care provision of the dissolution decree or the visitation guidelines imposed by the district court. He simply argues the district court "abused its discretion in awarding [Preul] attorney fees" and in ordering him "to pay the attorney fees for representation of the minor child." He also seeks appellate attorney fees.

The district court addressed the fee issue as follows:

> In considering [Preul's] request for attorneys' fees, the court must first determine whether [Preul] is the prevailing party. Second, if the Court finds [Preul] is the prevailing party, the court must then determine what would be a reasonable amount of fees and whether [Schindler] has the ability to pay those fees. First, [Preul] is clearly the prevailing party. The primary thrust of [Schindler's] petition to modify was the modification of primary care which the Court will not disturb. [Preul] is also the prevailing party in terms of determining the appropriate amount of child support to be paid and, to a certain extent, is the prevailing party regarding visitation provisions since the Court's ultimate disposition on what is appropriate is much more closely aligned to [Preul's] proposal as opposed to [Schindler's].

In considering whether the court should exercise its discretion to require [Schindler] to pay attorneys' fees, timing is important to the court. The court can understand [Schindler's] concerns when he first filed; however, long before this matter came before the court, [Schindler] had the benefit of [a custody evaluation] report. He knew it did not recommend a change in primary physical care. After [Schindler] received [the] report, he did not seek out the opinion of another expert to present to the court or, from the evidence received at the time of trial, otherwise challenge [the] recommendations. [Schindler's] decision to ignore his owns expert's recommendation placed [Preul] in the unfortunate position of having to defend the prior decision to award her primary care. Based upon the court's experience, the amount of fees that would have been necessary for [Preul] to incur would have been substantially less had [Schindler] chosen to, at bare minimum, abandon his request for primary care after [the custody evaluation] report was received. In reviewing the itemized statement offered by [Preul], [her] total fees up to the time of receiving [the report's] recommendations were approximately $8715.00 out of a total of $40,501.00. It stands to reason that the fees [Preul] would have been required [to] incur would have been substantially less had [Schindler] withdrawn his request for a change in primary care at that time. Trial itself would likely have been shorter.

Additional time had to be spent by [Preul] defending the child support calculation. [Schindler's] position was he didn't want to have to include all of his income in determining what his child support would be. At the time of trial, when asked about child support, [Schindler] stated he thought that "[Preul] needed the money[."] [Preul] should not have had to litigate any issue due to [Schindler's] desire to be treated differently than other litigants, particularly when he had the benefit of paying substantially less for an extended period of time.

Like most child custody cases, the court was required to attempt to reconcile different versions of events as testified to by the parties. In this regard, the court is concerned about [Schindler's] credibility. His Exhibit B was clearly not a complete or fair example of the communication that occurred between the parties as [Schindler] himself admitted. While it would not be the court's expectation that the parties would have produced every single email or text that had occurred over the course of a 16-year period, the court is concerned that [Schindler] appears to have intentionally selected certain emails in order to create the false impression that [Preul] had gone for long extended periods of time without contacting him. It was only after he was [] confronted during cross examination with [Preul's] exhibits that he admitted that, in several instances, [Preul] had made contact much sooner than his exhibit implied.

4

The court is also concerned with [Schindler's] failure to offer complete accurate statements regarding his finances. When [he] chose to amend his affidavit of financial status, he did not list any automobiles but, at the time of trial, he admitted that he did own an automobile. His reasoning for not including it on his affidavit of financial status was that it simply wasn't worth much money (approximately $1500.00). Additionally, while his [leave and earnings statement] indicates that [Schindler] has contributed a substantial amount of money to a Thrift Savings Plan, on his amended affidavit of financial status, he failed to list a value. This would be relevant information as it would give the court a better understanding of his financial condition to determine his ability or lack thereof to pay attorneys' fees.

Lastly and of greatest concern is [Schindler's] omission of an account that, by his own admission, is worth approximately $100,000.00. It strains credulity for [Schindler] to claim that he didn't understand the need to include that asset. [His] explanation that he thought an asset meant something that was "tangible" makes no sense when one considers he did list several other bank accounts which had substantially smaller amounts of monies in them. It also ignores the fact that, even though a car is certainly a "tangible" item, he chose not to include it. The court concludes that [Schindler] has not provided accurate truthful testimony on all issues pertaining to this case.

[Schindler] clearly has the ability to pay any reasonable amount of attorneys' fees the court may choose to assess. The court bases this conclusion on [his] testimony on recross examination when he acknowledged that his sworn affidavit of financial status as amended, filed approximately one week prior to trial, was incomplete in that it failed to disclose the existence of a bank account that has approximately $100,000.00. [Schindler's] explanation as to why he didn't believe this was an asset is questionable at best. Based upon the admission by [Schindler] that he holds an account with $100,000.00 along with the other assets he chose to disclose, it is clear that, as previously stated, [he] has the ability to pay whatever reasonable amount of attorneys' fees this Court orders. Additionally, it demonstrates that [Schindler] is far more capable of paying . . . the fees of the attorney who was appointed to represent [the child].

The court determines that [Schindler] should pay $35,000.00 of [Preul's] attorneys' fees. When one considers the fact that [he] had already paid $20,000.00 to his own attorney as of trial, [Preul's] fees are clearly not excessive. This is less than the full amount claimed by [Preul]. [Preul] should bear some responsibility for payment of her own attorneys' fees . . . . Likewise, attorney [fees of the child's attorney] should be paid by [Schindler].[1]

---

[1] The child's attorney filed an affidavit seeking $6317.50 in fees.

The district court's findings are fully supported by the record. We discern no abuse of discretion in the court's detailed ruling. *See In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997) (setting forth standard of review).

Preul's attorney seeks appellate attorney fees of $7700 for twenty-two hours spent in preparing the appeal. An award is discretionary. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Preul prevailed on appeal. Although the legal issues she had to address were straightforward, Preul was forced to sift through a fairly voluminous trial record to respond to the factual allegations raised by Schindler. We conclude Schindler should pay the entirety of Preul's $7700 appellate attorney fee bill. We deny Schindler's request for appellate attorney fees.

We affirm the district court's attorney fee awards to Preul and the child's attorney.

**AFFIRMED.**