# IN THE COURT OF APPEALS OF IOWA

No. 21-1424
Filed September 21, 2022


**DUSTIN VIVONE,**
　　　Petitioner-Appellee,

**vs.**

**KATIE MORRELL,**
　　　Respondent-Appellant.
_____


　　　Appeal from the Iowa District Court for Dallas County, Thomas P. Murphy, Judge.


　　　A mother appeals the district court's decree of paternity establishing custody, visitation, and support. **AFFIRMED.**


　　　Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines, for appellant.

　　　Todd E. Babich and Sierra Meehan Strassberg of Babich Goldman, PC, Des Moines, for appellee.


　　　Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**VAITHESWARAN, Presiding Judge.**

Katie Morrell and Dustin Vivone had a child in 2019. Morrell took the child home but allowed Vivone to visit every day. After about three months, Morrell started to limit Vivone's time with the child.

Vivone filed a petition to establish custody, visitation, and support. The parents stipulated Morrell would remain temporary physical caretaker of the child, subject to liberal visitation. The district court approved the stipulation.

Following entry of the order, Vivone visited the child twice at Morrell's home. Morrell surreptitiously recorded the visits. After the second one, she complained to police that Vivone sexually abused the child, citing the "video evidence." Morrell also took the child for a medical exam at a local hospital. Following an emergency room assessment, a nurse trained in sex abuse evaluations examined the child and referred the matter to the department of human services for investigation. The department issued a "not confirmed" assessment. The county attorney declined to press charges.

In the interim, Morrell continued to impede contact. Despite being advised by department staff that Morrell would have to afford Vivone visits during the investigation, Morrell obstructed a scheduled visit. Police had to intervene to facilitate it.

Vivone filed an application to have Morrell held in contempt. The parents ultimately signed a stipulated agreement delineating Vivone's parenting time and providing for dismissal of the application. The agreement was approved by the court.

Before the agreement was finalized, Morrell contacted the police again, citing "new evidence" in the form of recorded phone conversations with Vivone. She conceded Vivone denied the allegations. She also proffered other recordings, including one of a conversation with the county attorney as well as an "enhanced" video of the original surreptitious recordings. The police chief informed her the "doctored" video could not be considered.

The case proceeded to trial. The district court granted Vivone physical care of the child, subject to liberal visitation with Morrell. The court reasoned that Vivone would support the child's "relationship with [Morrell] more than [Morrell] [would] with [Vivone]." The court largely denied Morrell's reconsideration motion.

On appeal, Morrell preliminarily contends her procedural due process rights were "violated" based on Vivone's "failure to request an award of primary physical care in his Petition for Custody." She failed to preserve error on this contention. *See Arnold v. Arnold*, No. 00-1597, 2001 WL 1205284, at *3 (Iowa Ct. App. Oct. 12, 2003) (stating a party "brought none of the due process claims she now wishes to raise on appeal to the attention of the trial court for a ruling" and "[h]er failure to complain at the trial court level bars her due process challenge on appeal").

Morrell's primary argument is that the district court's decision was not in the child's best interests. *See Hensch v. Mysak*, 902 N.W.2d 822, 825 (Iowa Ct. App. 2017) (citing best interests standard). She admits "this case hinges on [her] allegations that Vivone sexually abused" the child. And she "agrees, if she unreasonably lodged claims of sexual abuse against Vivone . . . that would weigh against awarding her primary physical care." *See In re Marriage of Jacobson*, No. 17-1040, 2018 WL 1633512, at *4 (Iowa Ct. App. Apr. 4, 2018) (modifying

physical care where the mother "falsely accused [the father] of illegal conduct"); *In re Marriage of McCord*, No. 03-0497, 2003 WL 23219961, at *7 (Iowa Ct. App. Nov. 26, 3003) (stating mother engaged "in a course of conduct seeking to remove [the father's] presence from [the child's] life"). But, in her view, her claims were supported by the nurse who examined the child at the hospital.

The initial emergency room exam disclosed "[m]ild perianal erythema," with "[n]o labial or vaginal erythema noted."[1] The admitting notes stated, "Exam is unremarkable with the exception of some very mild perianal erythema." The nurse who evaluated the child for sex abuse found a "laceration [at] 6 [o'clock] posterior fourchette and erythema [at] 12 [o'clock]" in addition to "[d]iaper rash."[2] She found "possible" digital penetration. She also found "[s]welling." Contrary to Morrell's assertion, the nurse did not "wholly corroborate[]" the "sexual abuse allegations."

The department of human services, to whom the matter was referred, reported that the "abrasions" detected by the nurse "could have occurred accidentally with a fingernail by [the child] herself or others with fingernails." The agency concluded "it [c]ould not be determined the abrasions were caused intentionally, for sexual reasons or by her father."

Notwithstanding professional non-confirmation of the allegations, Morrell persisted in her assertion that Vivone sexually abused the child. At trial, she was asked, "And you still keep saying that Dustin Vivone has committed sex abuse on

---

[1] "Erythema" is defined as "abnormal redness of the skin or mucous membranes due to capillary congestion (as in inflammation)." *Erythema*, Merriam-Webster, www.merriam-webster.com/dictionary/erythema (last visited Aug. 31, 2022).

[2] "Fourchette" means "a small fold of membrane connecting the labia minora in the posterior part of the vulva." *Fourchette*, Merriam-Webster, www.merriam-webster.com/dictionary/fourchette (last visited Aug. 31, 2022).

your daughter; correct?" She responded, "Correct." When asked if "seeing [Vivone] consistently take [the child]" had "helped at all build [a] level of trust," she responded, "No." *See Jacobson*, 2018 WL 1633512, at *3 (citing the mother's "misguided mistrust" of the father). Vivone, in contrast, testified he would "[a]bsolutely" support Morrell's relationship with the child.

We are cognizant of Morrell's assertion that she had an obligation to "safeguard the[] child." We do not quarrel with that assertion. *See McCord*, 2003 WL 23219961 at *5, 7 (stating "a parent who has evidence another parent has committed abuse or allowed abuse to occur in his or her home has an obligation to report the abuse to the Department of Human Services" and "[w]e will not hold the fact a parent makes a report of alleged child abuse to the Department of Human Services based on some credible evidence against the reporting parent, even if it is returned as unfounded"). But the indefinite evidence did not allow her to circumvent the court orders. *See In re Marriage of Winnike*, 497 N.W.2d 170, 172, 174 (Iowa Ct. App. 1992) (modifying dissolution decree to grant father sole custody based on a finding that the mother was "strongly committed to pursuing her allegations of sexual abuse" and was "oblivious to any harm her public campaign against [the father] may have on her daughter" even after a juvenile court found no evidence of sexual abuse); *Adams v. Wilk*, No. 08-0004, 2008 WL 5412253, at *3 (Iowa Ct. App. Dec. 31, 2008) (affirming grant of physical care to father where "[t]he professionals . . . explained that many of the behaviors [the mother] believe[d] [were] indicative of abuse [were] actually normal behaviors for a child"). Nothing in the nurse's notes or the subsequent investigation gave Morrell cause to

circumvent the stipulated temporary order affording Vivone visitation and unilaterally limit his contact with the child.

Morrell also excluded Vivone from other key decisions involving the child. She failed to consult him when choosing a new daycare and failed to tell him where the daycare was located.

We recognize Morrell was the child's historic caregiver. *See In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007) (stating the "the factors of continuity, stability, and approximation are entitled to considerable weight"). But interference with the other parent's relationship may overcome that caregiving role. *See Jacobson*, 2018 WL 1633512, at *1–2 (modifying physical care from mother to father notwithstanding mother's role as primary caretaker where the mother "persistently, maliciously interfered with [the father's] visitation and relationship with [the child]"); *In re Marriage of Kress*, No. 03-1524, 2004 WL 1160149, *2–3 (Iowa Ct. App. May 26, 2004) ("We note that the parent who has been the primary caretaker of the children during the marriage will not necessarily be designated by the court to be primary caretaker at the time of the divorce."). Here, it did.

As for Morrell's contention that Vivone's work hours at the job he held up to the time of trial should have been grounds for denying him physical care, Vivone testified he had applied for a new job with a better schedule, had submitted the final piece of required paperwork, and was simply waiting to meet with the human resources department. He also spoke to his current employer about changing his position to accommodate his child's needs. The employer said he would try to work with him to get "better hours." Because Vivone took cognizable steps to

adjust his employment hours, his existing employment was not grounds for denying him physical care.

On our de novo review of the record,[3] we conclude the court's decision to grant Vivone physical care of the child was in the child's best interests.

In the alternative, Morrell argues the court should afford her increased visitation. The district court granted her "reasonable and liberal parenting time" according to the following visitation schedule:

> a. Until A.M. begins kindergarten, [Morrell] is awarded parenting time every other week commencing Sunday, at 7:00 p.m. through Tuesday (the second morning), at 6:00 p.m.
> b. Until A.M. begins kindergarten, [Morrell] is awarded parenting time every Thursday, from after school or 5:00 p.m. when school is not in session through Friday (the next day) at 8:00 a.m., or the beginning of school or day care when A.M. is enrolled in either.

We see no reason to tinker with this generous schedule.

Finally, Vivone seeks to have Morrell pay $11,585.75 he incurred in appellate attorney fees. *See* Iowa Code § 600B.26 (2020) ("In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees."). While Morrell's annual income exceeded Vivone's by $21,000 and Vivone was obligated to defend the district court's decision on appeal, we conclude Vivone has the wherewithal to pay his own attorney-fee bill. *See In re Marriage of Berning*,

---

[3] The videos Morrell recorded were offered and admitted but were not initially included in the appeal record. On this court's request, those videos were provided and reviewed. Suffice it to say they provide scant if any support for Morrell's allegations.

745 N.W.2d 90, 94 (Iowa Ct. App. 2007) (setting forth considerations for discretionary award).

**AFFIRMED.**