# IN THE COURT OF APPEALS OF IOWA

No. 22-1757
Filed April 26, 2023

**DANIEL FRED GOLDSBERRY, JR.,**
    Plaintiff-Appellant,

**vs.**

**MICHELLE LYNN BOND,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

Daniel Goldsberry appeals from a district court ruling granting Michelle Bond physical care of their two shared children. **AFFIRMED.**

Michael J. Lanigan, Waterloo, for appellant.

John J. Wood and Kate B. Mitchell of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellee.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

Daniel Goldsberry appeals from a district court ruling granting Michelle Bond physical care of their two shared children. Finding the district court's ruling is in the best interests of the children and not based on any improper considerations, we affirm.

### I.     Background Facts and Proceedings

This case is about physical care of Daniel and Michelle's two children (born 2017 and 2019). Daniel and Michelle were romantically involved for about six years, and their first child was born about one year into the relationship.

Daniel and Michelle's relationship began to deteriorate in 2021, and the "final straw" was in June 2021. On that night, the two went to a comedy club with Michelle's sister and other family members. Michelle "blacked out" and collapsed, and she had to be taken to the hospital. When confronted later that night, Daniel admitted to Michelle's family that he gave Michelle "X" or "ecstasy." A drug test at the hospital confirmed MDMA (ecstasy) in Michelle's system. Michelle has been consistent and adamant that she did not voluntarily take the drug, and her friends and family testified she is not a drug user. Daniel maintains Michelle knowingly took the drug, but the district court did not find Daniel's version of events credible. Michelle and Daniel separated immediately following the drugging incident and have not reconciled.

Both parties work in the car business. Michelle is a finance manager for a motor group, and Daniel is a finance manager for a different car company. At various points in the relationship, each parent provided daily care for some time. Michelle was more consistently the primary earner. The children's long-time

babysitter observed that Michelle was the parent who the children looked to for help and was responsible for their daily care, and Michelle's mother has been the other historical after-school or evening care provider. Both parents work long hours, and the district court found "[n]either party's current employment is ideal to raise two young boys."

The district court found both parents capable of raising the children but Michelle had been a "more stable parent" because of her consistent employment and housing. In contrast, "Daniel's employment and residences have been irregular." To the extent that Daniel recently made strides toward being a more involved parent, the district court noted that his efforts had been made without consulting Michelle and led to "disruption and confusion in school enrollment and insurance coverage." Also, at the same time these positive strides were made, Daniel was still dragging his feet paying Michelle for expenses incurred under the temporary shared-care arrangement.

Michelle testified that the children had been having trouble moving between the parties' houses every few days and that the lack of stability was hard on them. She also reported that the younger child repeated statements Daniel made, such as "Mommy doesn't love you," "Mommy's gross," or "Mom's a ho." And she described behavioral problems by the children that, at least in her mind, were traceable to Daniel.

Before trial, the parties stipulated to joint legal custody, alternating tax exemptions, attorney fees, and costs. The district court was tasked with resolving physical care, visitation, and child support. Following a contested trial, the district

court placed physical care with Michelle, emphasizing that "additional stability is in the best interests of the children." Daniel appeals.

## II.      Standard of Review

We review child custody orders de novo. *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). We ordinarily "give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them." *Id.* When physical care is at issue, our primary consideration is the best interests of the children. *See* Iowa R. App. P. 6.904(3)(o).

## III.      Discussion

Daniel's opening brief does not make clear whether he seeks joint physical care or that physical care be placed with him, but his reply concludes by seeking "joint placement," so we assume that is his position. We affirm the district court's ruling placing physical care with Michelle and we expressly deny Daniel's request for joint physical care. Even if Daniel had requested placing physical care with him, we would find the children's best interests are served by placing physical care with Michelle and affirm the district court.

"The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). We are guided by the factors in Iowa Code section 598.41(3) (2021) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), in evaluating physical care generally. When evaluating joint physical care specifically, we also consider the following nonexclusive factors:

(1) "approximation"—what has been the historical care giving arrangement for the child[ren] between the two parties;
(2) the ability of the spouses to communicate and show mutual respect;
(3) the degree of conflict between the parents; and
(4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 697–99). "Any consideration of joint physical care, however, must still be based on Iowa's traditional and statutorily required child custody standard—the best interest of the child." *Hansen*, 733 N.W.2d at 695.

Guided by case law, we find joint physical care is not appropriate on this record. First, the district court found that Michelle was the primary historical caregiver for the children, and we agree. While Daniel participated in parenting, the credible record evidence shows Michelle was more involved with the children's daily care. Second, while Michelle is respectful and able to communicate with Daniel, the same cannot be said of Daniel with Michelle. At minimum, there is no evidence of the children repeating harsh words and insults Michelle made about Daniel, while there is credible evidence of the children repeating insulting language about Michelle. We are also concerned that Daniel scheduled the children with a new dentist and made decisions about schooling without consulting Michelle in the months before trial, and we are troubled that he lacks insight into why this conduct was problematic, even when it affected insurance coverage. Third, there is significant conflict between these parents, and we do not believe Daniel in particular is capable of the selfless collaboration needed to successfully co-parent in a joint care arrangement. Fourth, while we see limited disagreement in this record on general parenting approaches, we find this last factor does not

overpower the preceding three, and the balance of evidence weighs against joint physical care.

Along with the four-factor analysis, we also consider the drugging incident in June 2021. We accept the district court's credibility finding that Daniel drugged Michelle without her consent. The act of drugging a significant other without consent is, in our view, a form of domestic abuse and a significant factor weighing against the offending significant other's claim for joint physical care. *Cf. In re Marriage of Hynick*, 727 N.W.2d 575, 579–80 (Iowa 2007) (finding domestic abuse a "significant factor" in assessing joint physical care because the abuse "reflect[ed] the ability of the parties to listen to one another and respect one another's opinions and feelings").

To the extent that Daniel asserts in his appellate brief some kind of "gender bias" claim, we reject his argument. In our de novo review, we generally agree with the district court's fact-findings and see nothing biased (in regard to gender or any other suspect class) in the court's analysis of earnings capacity and historical caregiving. All of the district court's fact-findings were supported by substantial evidence and buttressed with credibility findings when irreconcilable conflicts in the evidence at trial so required. We also observe Daniel agreed under oath that Michelle is a "good mom" and "provides stability for the children," which are essentially the same facts the district court relied on when placing physical care with Michelle. Daniel's attacks on the district court do not persuade us of any bias or improper consideration.

Last, Michelle seeks appellate attorney fees. Her brief does not ask for a specific amount of appellate attorney fees, and she has not filed a fee affidavit with

our court. After considering the relevant factors and exercising our discretion, we deny Michelle's request for appellate attorney fees largely because her income is significantly greater than Daniel's. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013); *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Costs on appeal are assessed to Daniel.

**AFFIRMED.**