**IN THE COURT OF APPEALS OF IOWA**

No. 24-1744
Filed July 23, 2025


**IN RE THE MARRIAGE OF JUSTIN L. HANSON
AND ALLISON L. HANSON**

**Upon the Petition of
JUSTIN L. HANSON,**
        Petitioner-Appellee,

**And Concerning
ALLISON L. HANSON,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Floyd County, Rustin Davenport,

Judge.


        Allison L. Hanson appeals the physical-care provision of her decree

dissolving her marriage to Justin L. Hanson. **AFFIRMED.**


        David H. Skilton of Cronin, Skilton & Skilton, P.L.L.C., Charles City, for

appellant.

        Megan R. Rosenberg of Cady & Rosenberg Law Firm, PLC, Hampton, for

appellee.


        Considered without oral argument by Greer, P.J., and Badding and

Chicchelly, JJ.

**CHICCHELLY, Judge.**

Allison L. Hanson appeals the physical-care provision of her decree dissolving her marriage to Justin L. Hanson. Upon our de novo review, we affirm.

### I.    *Background Facts and Proceedings.*

Allison and Justin were married in 2012 and separated in December 2023. Soon after their separation, Justin filed for divorce. Both parties blamed the other for the breakdown of the marriage, citing various infidelities and alleging parental alienation and domestic abuse. Both parties also requested physical care of their two children: D.H., born in 2021 and M.H., born in 2013. The parties described D.H. as "very energetic, very smart" and easy to get along with. But M.H., who was ten years old at the time of trial, was described as having "behavioral difficulties," which sometimes resulted in violent outbursts. M.H. can become aggressive when agitated, "kicking, punching, biting, and spitting." How best to handle these outbursts and to prevent them were sources of conflict for Allison and Justin, with the parties disagreeing on what approach to use with M.H. Justin was primarily responsible for the children's mental-health therapy and prescriptions as Allison testified she is "not a strong believer" in medication.

Justin also presented video evidence of Allison unable to manage M.H. pre-separation. In one video, "she physically launches M.H." and in another, "she states that she is so distraught that she could kill M.H." And after the parties' separation, Allison continued to struggle with M.H. and required assistance from Justin, which he provided. On multiple occasions, law enforcement was called, with one incident occurring after M.H. alleged that Allison "was holding him down and choking him." The report was resolved after Justin took M.H. back to his

residence. On another occasion, the Iowa Department of Health and Human Services investigated after M.H. was given a double dose of medication while in Allison's care. While the investigation determined that M.H. was safe to remain with Allison, the department noted the parents' "communication challenge[s]", describing the home as "an atmosphere of conflict."

Trial occurred in August 2024, at which Allison described Justin as a controlling, unstable alcoholic while Justin described her as an abusive compulsive liar. The court did not agree with either characterization, although it questioned Justin's sobriety and found that his history of switching jobs "reflects poorly on his stability." But it also found Allison was unable to effectively parent M.H. Accordingly, the court dissolved the parties' marriage and granted Justin's request for physical care. While Allison requested trial attorney fees, the court declined to grant either party such an award. Allison appeals both provisions.

## II. Physical-Care Determination.

Allison requests physical care of the children, or in the alternative, shared physical care.[1] Our review of physical-care determinations is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). In determining whether a physical-care arrangement is appropriate, our primary consideration is always the

---

[1] Allison also contends that the court improperly relied on certain evidence, specifically an exhibit written by M.H.'s therapist which alleged that Allison did not participate in M.H.'s therapy. After trial, Allison moved to reconsider, arguing the exhibit was disclosed late and should not have been considered by the court. The district court agreed, striking any mention of the exhibit in its ruling. But Justin also testified that Allison was invited to sessions and did not attend, which the court *did* consider. While Allison vaguely concludes that the court failed to "undo the harm done" by relying on the testimony instead, she provides no analysis or support for this claim; we therefore find this argument waived and do not consider it further. *See* Iowa R. App. P. 6.903(2)(a)(8)(3).

best interests of the children. *Id* at 695. Our "objective . . . is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* We are often entrusted with the difficult task of selecting which parent will have primary physical care of the children following a divorce. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 31 (Iowa 2015) (noting the difficulty of selection when "the children have the luxury of having two good, loving parents and two caring and attentive step-parents who provide healthy and suitable home environments for the children"). But there are also circumstances in which the court must choose between two very imperfect parents. *See Smith v. Smith*, No. 03-0863, 2004 WL 433906, at *2 (Iowa Ct. App. Mar. 10, 2004) ("Simply put, the record reveals the trial court was faced with the unhappy task of choosing between two immature and seriously flawed parents."). This is one such case.

The district court aptly explained why shared physical care was not appropriate:

> Neither party contends that [the shared physical-care arrangement] has gone very well or that this is in the best interests of the children. The parties' hostility to each other was shown to the Court regarding their negative attitudes towards each other. They do not have the ability to communicate. M.H. appears to need more stability in his life than can be provided in a shared physical care arrangement.

While the parties temporarily shared physical care before trial, several events and altercations occurred, including a departmental child abuse assessment, M.H.'s behavioral concerns escalating at school, and several calls to law enforcement. Both parties also conceded that their communication difficulties were not conducive to a shared care arrangement. We agree with the district court (and the

parties) that shared physical care is simply not workable under these challenging circumstances.

When considering a physical-care arrangement, we consider the factors established by statute. *See* Iowa Code § 598.41(3) (2024). While the court expressed its "concerns about both of the parties providing the appropriate care for the children" and further admonished them for their respective failures to communicate, it specifically found that Justin "appears to have the superior ability to deal with the special needs of M.H." In making such a finding, the court relied on Justin's testimony, in which he described Allison parenting as "screaming, yelling, throwing things" and her physical restraint of M.H. by "lift[ing] his legs and his feet up over his head" and sitting on him until "he wasn't able to breathe for a few seconds." The court also relied on the video evidence depicting Allison's inability to handle the outbursts, which it described as "disturbing and concerning." While Allison attacks these credibility findings, and specifically argues that the video evidence was misinterpreted, we give considerable deference to credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses. *See In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007). While both parties have their faults, the record supports the court's finding that Justin is the parent better able to meet M.H.'s needs. Justin is able to provide a stable routine and comfortable environment in the marital home for the children, especially for M.H. who "does not cope well with change." Accordingly, we agree with the district court that it is in the children's best interests to be placed with Justin.

### III.    Trial and Appellate Attorney Fees.

Allison also contends the district court abused its discretion by declining to award her trial attorney fees. We review attorney-fees determinations for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). But Allison supports her argument only by stating that she was "the primary provider," which goes against an award of trial attorney fees. *See id.* (finding one party "making more money" favors an award of attorney fees). Because the court presumably based its determination on the parties' incomes and expenses as evidenced by its consideration of their financial affidavits, we see no abuse of discretion in declining to award trial attorney fees. While the court found that Justin made more money, he also had higher expenses, was required to pay Allison an equalization payment in lieu of assets, and was responsible for a larger share of the children's medical expenses.

Finally, both parties request appellate attorney fees. Such an award is not a matter of right but rests in our discretion. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). In exercising this discretion, we consider the needs of the party seeking appellate attorney fees, the other party's ability to pay, and the merits of the claims made on appeal. *Id.* Considering these factors, we find that neither party is in a financial position to pay the others' fees, so we decline to award either party appellate attorney fees.

### IV.    Disposition.

Because we find that physical care with Justin is in the best interests of the children, we affirm.

**AFFIRMED.**