# IN THE COURT OF APPEALS OF IOWA

---

No. 25-1208
Filed April 15, 2026

---

**In re the Marriage of Kendra Samia Bonham and Colt Robert Bonham**

Upon the Petition of
**Kendra Samia Bonham,**
Petitioner–Appellant,

And Concerning
**Colt Robert Bonham,**
Respondent–Appellee.

---

Appeal from the Iowa District Court for Appanoose County,
The Honorable Joel D. Yates, Judge.

---

**AFFIRMED**

---

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West
Des Moines, attorney for appellant.

Jason S. Rieper of Rieper Law, P.C., Des Moines, attorney for appellee.

---

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Buller, J.

**BULLER, Judge.**

Kendra Bonham appeals from a divorce decree placing physical care of a child with her ex-husband Colt Bonham. She argues the district court should have awarded her physical care instead. Among other claims, Kendra argues the court gave improper weight to each parent's handling of the child's alleged food allergy. Considering the record before us and the district court's credibility findings, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Kendra and Colt married and had one child together in 2022. Before the child was born, the couple decided to move from Kansas City to Centerville to be close to Kendra's family. And they bought a house together in town. The record includes disputed evidence that Kendra could be combative while the couple lived together. The couple separated in late 2023, and Colt moved back to the Kansas City area, where he continues to reside. For the first three months after the separation, the parents alternated who the child stayed with every other weekend.

In March 2024, Kendra filed for divorce, asking for joint legal custody and for physical care to be placed with her. Colt requested shared physical care, or alternatively, that the child be placed in his physical care. The parties agreed to a temporary order establishing joint legal custody and shared physical care with alternating weeks until trial. During the fourteen months the temporary order was in place, the parties were mostly amicable; they dispute whether communications between them worsened.

Kendra continues to live in the Centerville house. She works regular hours for a fiber optic company in a nearby town. She has friends and family

members in the local area. And she has employed the same daycare provider since her maternity leave.

Colt lives with his girlfriend in an apartment in Lee's Summit, Missouri, which he has rented since August 2024. Colt is an elevator mechanic, which occasionally requires him to work extended hours. He has friends and family members throughout the Kansas City metro. And he employs a local daycare provider.

Between August and September 2024, Colt grew concerned the child was vomiting and developing rashes, and he started tracking the symptoms in a calendar. In October, he took the child to a pediatrician who, according to Colt, said that the child's diet may be causing the symptoms. Colt implemented an elimination diet and eventually identified what he believed was the culprit food allergen. Colt told Kendra, who was skeptical; she believed the child's symptoms weren't related to a food allergy at all but instead caused by run-of-the-mill diaper rashes and a bacterial infection that she claimed Colt's pediatrician diagnosed. Tension between the parties grew because Kendra did not restrict the child's access to the suspect allergen. For her part, Kendra and her daycare provider denied seeing any adverse reactions from its consumption. The child has not been formally diagnosed with a food allergy, and no allergy tests were admitted into evidence at trial.

The district court was "convinced that both parents are capable parents, and each will do well in the future to protect the best interests of their [child]." And the court found both parents "enjoy an abundance of family and support systems where they currently reside." The court also noted that Colt, more than Kendra, focused his testimony on how he would foster the child's relationship with the non-custodial parent. As to the food allergen, the court found Colt took "proper steps to address the situation"

and "wishe[d] Kendra would have taken more proactive steps to learn more about the situation and been more assertive to address the potential concern." And the court found Colt more credible than Kendra overall. Making what it described as a difficult choice between two good parents, the district court placed physical care of the child with Colt. Kendra appeals.

## STANDARD OF REVIEW

Actions involving the dissolution of marriage are in equity, and our review is de novo. *In re Marriage of Miller*, 966 N.W.2d 630, 635 (Iowa 2021). "[W]e examine the entire record and adjudicate anew" the issues presented. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *Id.*

## DISCUSSION

As the basis for why she believes the child should have been placed in her physical care, Kendra claims the district court misweighed evidence concerning stability and continuity of the child's care, that the record does not reflect she submitted less evidence than Colt about supporting the other parent's relationship with the child, and that the court improperly weighed the food-allergen evidence. We take each in turn.

"The objective of a physical care determination is to place the child[] in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Iowa Code section 598.41 (2025) sets forth a series of nonexclusive factors that are relevant in physical care determinations. *See Hansen*, 733 N.W.2d at 696. And our case law sets forth similar additional factors. *See In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).

Our overriding consideration "is the best interests of the child." Iowa R. App. P. 6.904(3)(n).

Kendra first urges that her familial support network, the child's daycare in Centerville, and her house in Centerville are "the only home" the child has known, which means stability and continuity of placement favor placing physical care with her. But the child is four years old and spent the fourteen months before trial alternating between the parents' homes every week. We think this factor is largely inconclusive given that history. And while stability is important, "our case law places greater importance on the stability of the relationship between the child and the primary caregiver over the physical setting of the child." *In re Marriage of Williams*, 589 N.W.2d 759, 762 (Iowa Ct. App. 1998). On this point, the district court found both parties capable parents with robust social support, and we tend to agree on our de novo review.

As for Kendra's second claim, that the record does not support that Colt offered more evidence of intent to maintain the child's relationship with her than vice versa, we have scrutinized the record and find the district court's finding supported by the transcript. To the extent Kendra testified on the subject, it was only after Colt expressed concern about her silence on the issue. This was a proper consideration, and the weight this factor deserved was informed by the district court's credibility assessment, which we are loath to second-guess.

Last among her challenges, Kendra asserts the court gave improper weight to her conduct relating to the child's possible food allergy. She urges that the allergy has not been formally diagnosed, the medical evidence in the record was somewhat thin, and witness testimony proved at most correlation rather than causation. While these are all legitimate arguments to make to a

5

factfinder regarding what weight to afford this issue, Kendra had that opportunity at trial and the district court found her arguments unpersuasive and her testimony not credible. Although we may have afforded this factor less weight than the district court did, this difference of opinion is no basis for relief on appeal. And we agree with the district court's broader observation regarding the positives of Colt's parenting, his support of Kendra's relationship with the child, and his conflict-resolution style, all of which are proper considerations that support placing physical care of the child with him. *See Hansen*, 733 N.W.2d at 695.

Both parties request appellate attorney fees. "An award of attorney fees on appeal is not a matter of right, but rests within [the court's] discretion." *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In making this determination, we consider the financial needs of the requesting party, the ability of the other party to pay, and whether the requesting party had to defend the trial court's decision on appeal. *McDermott*, 827 N.W.2d at 687. While Kendra makes notably less than Colt, she did not prevail on any of her arguments and was not required to defend the district court's decision. Considering all of this, we decline to award either party appellate attorney fees.

**AFFIRMED.**