# IN THE COURT OF APPEALS OF IOWA

No. 24-0994
Filed April 9, 2025

IN RE THE MARRIAGE OF DALTON K. MICULINICH
AND ROBYN M. MICULINICH

Upon the Petition of
**DALTON K. MICULINICH,**
        Petitioner-Appellant,

**And Concerning**
**ROBYN M. MICULINICH,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Cerro Gordo County,
Blake H. Norman, Judge.

Dalton Miculinich appeals the physical-care provisions of the decree
dissolving his marriage. **AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

Cameron M. Sprecher of O'Mara & Sprecher, Mason City, for appellant.

Megan R. Rosenberg of Cady & Rosenberg Law Firm, PLC, Hampton, for
appellee.

Considered without oral argument by Tabor, C.J., and Schumacher and
Chicchelly, JJ.

**SCHUMACHER, Judge.**

On appeal from the decree dissolving his marriage to Robyn Miculinich, Dalton Miculinich challenges the district court's decision to place their two children in Robyn's physical care rather than joint physical care. Upon our review, we determine it is in the children's best interests to be placed in Robyn's physical care. We affirm and remand with instructions for the district court to enter an order on appellate attorney fees.

## I. Background Facts and Proceedings

Robyn and Dalton were married in 2013. Their two children were born in 2016 and 2021. The parties separated in February 2023, and Dalton filed a petition for dissolution of marriage in May. An order on temporary matters granted the parties joint legal custody, with Robyn being awarded temporary physical care. Dalton was awarded liberal visitation and ordered to pay child support of $1032 per month. The temporary order was in place about nine months before trial.

The dissolution trial was held in May 2024. The court heard testimony that the parties met in high school when they both worked at Fareway. After high school, they moved to Cedar Rapids, where Robyn earned an office certificate from Kirkwood Community College. Meanwhile, Dalton continued working for Fareway, and he eventually became an assistant manager. Over the next few years, the parties moved in relation to different Fareway locations to further Dalton's management track. Dalton was demoted in 2018. The parties then moved to Clear Lake.

Dalton obtained employment with Atlantic Bottling, where he continues to work, earning around $64,000 per year. Robyn works as a receptionist earning

about $43,000 per year. At the time of the dissolution, the parties' older child was school-age; the younger attended daycare. The parties agreed that historically, Robyn had been responsible for the majority of parenting tasks and caregiving for the children. Since the parties' separation, Dalton has taken on a somewhat more involved role in parenting, attending medical appointments, activities, and parent-teacher conferences.

The district court issued a dissolution decree for the parties in May. The court granted the parties joint legal custody of the children, with Robyn having physical care. The court found:

> There is no doubt that Robyn is an appropriate caretaker and custodian for the children. Dalton has made strides to becoming an appropriate custodian, for which he is commended. The primary factors against shared physical care are the dynamics of Dalton and Robyn's relationship and the lack of long-term care. Children need stability and continuity to thrive. The court agrees with Robyn that Dalton's current acts in supporting the children are very short-term and he has not shown the ability to do so over a long period of time. The court sees that nothing truly changed in Dalton's life that now allowed him to step up as a parent that he could not have been doing for the last 7 years. Upon the court's consideration of the factors set forth above, the record developed herein, and having observed their demeanor and disposition at trial, it is in the best interest of the children that Robyn is granted primary physical care of [the children].

Dalton was granted visitation on alternating extended weekends with an overnight on the other weeks, alternating holidays, and three weeks in the summer. Dalton appeals the physical care provisions of the dissolution decree.

## II. Standard of Review

We review dissolution proceedings de novo. Iowa R. App. P. 6.907. Although we give weight to the factual findings of the district court, especially when

considering the credibility of witnesses, we are not bound by them. Iowa R. App. P. 6.904(3)(g).

## III.    Physical Care

Dalton claims the district court erred in not granting joint physical care of the children. In determining whether to award joint physical care or physical care with a primary parent, the best interest of the children remains the primary consideration. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). In considering whether joint physical care is in the children's best interest, the court looks at these factors:

> (1) "approximation"—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 699). On appeal, Dalton contends the district court erred in applying the *Hansen* factors by "focus[ing] on occurrences that took place prior to the separation," rather than acknowledging Dalton was "making the changes necessary to be a single parent." For the reasons below, we disagree.

Beginning with the first factor, the district court noted the parties' agreement that Robyn, "before separation, was the primary caretaker for the children." Dalton explained he was not involved in child-caretaking tasks before the parties' separation because he was "working a lot." But Dalton acknowledged there were times he was home and able to pick the children up from daycare but "chose not to." He also agreed that most days after work, he started drinking mid-afternoon

and did not eat dinner with the children. Dalton now claims he has adjusted his work schedule "to account for the times he had his children, but the Court is holding that against him."

We disagree with Dalton's characterization of the court's finding. Rather, the court noted its concern about Dalton's lack of involvement over the years despite his ability to do so and how it reflected his "ability to be a long-term custodian of the children." As the court observed, "Dalton's job has not changed nor has his role, but he is now able to perform parental tasks." We are not persuaded that Dalton's recent availability and involvement diminishes Robyn's consistent record of caregiving over the children's lives. We conclude the district court properly weighed this factor in determining it did not support joint physical care. *See Hansen*, 733 N.W.2d at 697 ("[T]he successful caregiving by one [parent] in the past is a strong predictor that future care of the children will be of the same quality.").

We turn to the next factor, the quality of parental communication. The district court found Dalton's "difficulty getting along with people who disagree with him" and "derogatory" and "controlling" treatment toward Robyn weighed against joint physical care. Dalton claims the court's decision contradicts the court's finding that "the parties can communicate." All the same, Dalton testified it was "difficult" to communicate with Robyn about parenting topics and Dalton opined that Robyn would "have trouble" implementing a parenting plan with him. Dalton's claim on this point is further undermined by the fact that he testified: "I just didn't want to see her family"; "I may have told my parents in reference to Robyn's parents that they may not see their grandkids"; and he was "[m]aybe"

condescending or critical of Robyn "in a joking manner." But Robyn testified communication from Dalton was a series of demands, threats, and attacks. While Dalton relies most heavily on this factor to support his claim for joint physical care, we concur with the district court that this factor leans in favor of Robyn having physical care.

The third factor considers the degree of conflict between the parents. After the parties' separation, Dalton used ultimatums to get his way with the parenting schedule. But the record evidence shows conflict has permeated the parties' relationship for years. Dalton was unsupportive when he learned Robyn was pregnant. And he isolated Robyn and the children from friends and family, including her parents, which negatively impacted the children, who were prevented from developing relationships with extended family as a result. *See Libby v. Burgett*, No. 23-1563, 2025 WL 52278, at \*5 (Iowa Ct. App. Jan. 9, 2025) (considering whether the parents' conflict "negatively impacted" the child). *But cf. Hensch v. Mysak*, 902 N.W.2d 822, 827 (Iowa Ct. App. 2017) ("While the parties have had some communication difficulties and personal conflict, there is no evidence the communication difficulties or personal conflict interfered with their ability to act in the best interest of the child."). In short, this factor also weighs against joint physical care.

Finally, relating to the fourth factor, the district court noted disagreements between the parties on some daily parenting matters. The court also noted Dalton no longer has a relationship with his sister, but Robyn has maintained the children's relationship with their cousins and other relatives on Dalton's side of the family, including his parents. But because it appears the parties generally agree

on other daily parenting issues, including the children's routines and activities, this factor is neutral as to joint physical care.

The ultimate objective of a physical-care determination is to place children in the environment most likely to bring them to healthy physical, mental, and social maturity. *Hensch*, 902 N.W.2d at 824. Because each family is unique, the decision is primarily based on the particular circumstances of each case. *Hansen,* 733 N.W.2d at 699. After balancing the relevant factors, and considering the totality of the evidence, we find that it is in the children's best interests to be placed in Robyn's physical care. Accordingly, we affirm the court's physical care decision.

## IV. Appellate Attorney Fees

Robyn requests an award of $6000 in appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018) (citation omitted). In considering whether to award such fees we consider the needs of the party seeking the award, the financial ability of the other party to pay, and the merits of the appeal. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Considering these factors, particularly the district court's findings that Robyn has an annual income of $43,196, that Dalton has an annual income of $64,008,[1] and that Robyn is the prevailing party on appeal, we grant Robyn's request.

But because Robyn's attorney did not file a fee affidavit with our court, we are unable to evaluate whether her request is reasonable. *See In re Marriage of Samuels*, 15 N.W.3d 801, 808–09 (Iowa Ct. App. 2024) (noting the preference of

---

[1] The parties do not dispute those findings on appeal.

reviewing courts for attorneys to file fee affidavits).  Accordingly, we remand for the district court to enter an order requiring Dalton to pay Robyn's attorney fees in a reasonable amount to be determined by the court upon review of an attorney fee affidavit.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**